******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JON SWEBILIUS
(SC 19526)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Argued September 23, 2016—officially released May 30, 2017*

*Daniel M. Erwin*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Leon F. Dalbec, Jr.*, and *James Dinnan*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

PALMER, J. In *State* v. *Crawford*, 202 Conn. 443, 521 A.2d 1034 (1987), this court held that a criminal statute of limitations will be tolled by the issuance of an arrest warrant within the statutory limitation period, as long as the warrant is executed "without unreasonable delay." Id., 451. The defendant, Jon Swebilius, was charged with possession of child pornography in the first degree in violation of General Statutes (Rev. to 2007) § 53a-196d (a) and was arrested thirty-two days after the issuance of a warrant for his arrest and thirteen days after the expiration of the applicable five year statute of limitations for that offense.[1] The defendant moved to dismiss the charge on the ground that the prosecution was barred by the statute of limitations because, he claimed, the delay in the execution of the warrant was unreasonable. The trial court denied the motion, and the defendant appealed to the Appellate Court, which affirmed the judgment of the trial court, concluding that the delay was reasonable as a matter of law under *Crawford* and its progeny. *State* v. *Swebilius*, 158 Conn. App. 418, 423–28, 119 A.3d 601 (2015). We granted the defendant's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly affirm the trial court's decision denying the defendant's motion to dismiss pursuant to . . . *Crawford* . . . ?" (Citation omitted.) *State* v. *Swebilius*, 318 Conn. 907, 122 A.3d 635 (2015). We conclude that the Appellate Court incorrectly determined that a thirty-two day delay in the execution of an arrest warrant, where the warrant was executed after the expiration of the limitation period, is reasonable as a matter of law such that the state was under no obligation to present evidence demonstrating that the delay was not objectively unreasonable and, therefore, excusable. Accordingly, we reverse the judgment of the Appellate Court with direction to remand the case to the trial court for a hearing on whether the delay in the execution of the warrant was reasonable under the circumstances.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. On May 28, 2008, the Connecticut State Police executed a search warrant on room number 59 at the Meriden Inn, the defendant's place of residence at the time. During the search, the police seized thirty-four computer related items, which were submitted on the same day to the state forensic laboratory for analysis. The police did not receive the results of the forensic analysis until April 2, 2013, and another month elapsed before they secured a warrant for the defendant's arrest.[2] The arrest warrant was issued on May 9, 2013, nineteen days before the expiration of the five year limitation period of General Statutes (Rev. to 2007) § 54-193 (b). A short time after the limitation period expired, the defendant con-

tacted the state police seeking the return of the property seized from his residence on May 28, 2008. As a result of this inquiry, the defendant learned about the warrant for his arrest, and, on June 10, 2013, he voluntarily surrendered to the state police.[3]

Following his arrest, the defendant moved to dismiss the charge, claiming that, even though the arrest warrant had been issued within the statutory limitation period, the delay in its execution was unreasonable, and, therefore, the prosecution was barred by the statute of limitations. Prior to the hearing on his motion to dismiss, the defendant entered a conditional plea of nolo contendere subject to the trial court's ruling on the motion to dismiss. Thereafter, a hearing on that motion was held before the court, *S. Moore, J.* At the hearing, the defendant presented uncontested evidence that he had lived openly in Connecticut and was available for arrest throughout the five year limitation period. The state adduced no evidence. Following the hearing, the trial court found that the defendant "was not elusive, was available in the area and did not evade at the time service was made." The court also found that the state police "did not attempt execution of the [arrest] warrant before June 10, 2013, and only executed the warrant on that date upon the [defendant's] surrendering himself at the police barracks." Although the state presented no evidence as to the reasons for the delay in the execution of the arrest warrant, it argued that the delay was not unreasonable because of its short duration, because the defendant suffered no prejudice as a result thereof, and because there had been "no showing" by the defendant "of any lack of due diligence" on the part of the police in executing the warrant.

The trial court agreed with the state that the issuance of the arrest warrant, in this case, tolled the statute of limitations. Although it recognized that, under *Crawford*, "there is no per se approach as to what constitutes a reasonable time to execute a warrant," the court was unable to find "that a period of time as [short] as [thirty-two] days would be considered unreasonable," noting that delays found by other courts to be unreasonable typically involved significantly longer periods of time.[4] Thus, the court concluded that, "[a]lthough the police efforts might be characterized as [minimal] or nonexistent . . . given the very short period of time that elapsed from the signing of the warrant to the execution of service, the police actions resulted in a timely commencement of prosecution."[5]

The defendant appealed to the Appellate Court, claiming that the trial court improperly relied solely on the length of the delay in finding that the thirty-two day delay was reasonable. See *State* v. *Swebilius*, supra, 158 Conn. App. 419–20, 427. The Appellate Court disagreed. The court acknowledged that, under *State* v. *Soldi*, 92

Conn. App. 849, 857, 887 A.2d 436, cert. denied, 277 Conn. 913, 895 A.2d 792 (2006), once a defendant has demonstrated that he was in the state and available for arrest during the relevant timeframe, the burden generally shifts to the state to prove that any delay in the execution of an arrest warrant was not unreasonable. See *State* v. *Swebilius*, supra, 424. The court also acknowledged that, under *State* v. *Crawford*, supra, 202 Conn. 451, the "failure to execute an arrest warrant for even a short period of time might be unreasonable . . . ." (Internal quotation marks omitted.) *State* v. *Swebilius*, supra, 428. The court determined, however, that *State* v. *Kruelski*, 41 Conn. App. 476, 487, 677 A.2d 951, cert. denied, 238 Conn. 903, 677 A.2d 1376 (1996), which held that a one day delay in executing a warrant beyond the statute of limitations was reasonable as a matter of law, was controlling in the present case. *State* v. *Swebilius*, supra, 428; see also id., 426–28 and n.8. The Appellate Court reasoned that *Kruelski* established that some delays may be so de minimis as to require no justification by the state, and that the thirty-two day delay in the present case fell into that category. See id., 428.

On appeal to this court, the defendant argues that the Appellate Court's conclusion that the delay was sufficiently brief as to require no justification ignores this court's express rejection of a per se rule in *State* v. *Crawford*, supra, 202 Conn. 451, and this court's admonition therein that the failure to execute a warrant "for even a short period of time" might be unreasonable in certain circumstances. Id. The defendant also argues that allowing the state to extend the statute of limitations without any showing of due diligence undermines the right of defendants to fair and timely notice of the charges against them, as well as the values of repose and finality embodied in such statutes. The defendant further contends that the Appellate Court's reliance on *Kruelski* was misplaced because, in that case, the police executed the arrest warrant on the day they received it, and, therefore, the court's conclusion that the delay was reasonable as a matter of law must be interpreted in light of those facts rather than as evidence that the court intended to create an exception to *Crawford*.

The state responds that, even if delays in the execution of a warrant require justification in all cases, regardless of the brevity of the delay, *Crawford* places the burden on the defendant to prove that the delay was unreasonable. Thus, when the defendant fails to produce evidence demonstrating that the police failed to act with due diligence in serving a warrant, the delay must be presumed to be reasonable. Accordingly, the state maintains that cases such as *State* v. *Soldi*, supra, 92 Conn. App. 857, which shift the burden to the state to justify delays in the execution of a warrant once the defendant meets his burden of establishing his availability for arrest during the relevant time period, are anti-

thetical to the holding in *Crawford* and should be overruled.

We agree with the defendant that the Appellate Court incorrectly determined that some delays in the execution of an arrest warrant may be so brief as to be reasonable as a matter of law for the purpose of tolling the applicable statute of limitations.[6] We further conclude that the burden shifting framework that the Appellate Court applied in *Soldi* and other cases is fully consistent with *Crawford* and properly allocates burdens between the parties.

General Statutes (Rev. to 2007) § 54-193 (b) provides in relevant part that "[n]o person may be prosecuted for any offense, except a capital felony, a class A felony or a violation of section 53a-54d or 53a-169, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed. . . ." In *State* v. *Crawford*, supra, 202 Conn. 447, in which the applicable time limitation for the misdemeanor offenses charged was one year, this court was asked to determine whether the mere issuance of an arrest warrant within the limitation period was sufficient to commence a prosecution for purposes of § 54-193, thereby tolling the limitation period. In that case, the trial court had rejected the motion of the defendant, Ronald L. Crawford, to dismiss the charges as being beyond the statute of limitations when the arrest warrant for Crawford had been issued approximately two months after the commission of the charged offenses—well within the one year limitation period—but not executed for more than two years after the offenses were committed and more than one year after the expiration of the statute of limitations. Id., 445. This court upheld the trial court's judgment. See id., 453.

In doing so, we recognized that, as a general matter, "[w]hen an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him. When the prosecutorial authority has done everything possible within the period of limitation to evidence and effectuate an intent to prosecute, the statute of limitations is tolled." (Footnote omitted.) Id., 450. We also recognized, however, "that some limit as to when an arrest warrant must be executed after its issuance is necessary in order to prevent the disadvantages to an accused attending stale prosecutions, a primary purpose of statutes of limitation[s]." Id. Accordingly, we determined that, "in order to toll the statute of limitations, an arrest warrant, when issued within the time limitations of § 54-193 (b), *must be executed without unreasonable delay*." (Emphasis added.) Id., 450–51. In reaching that determination, we

expressly declined "[to] adopt a per se approach as to what period of time to execute an arrest warrant is reasonable. A reasonable period of time is a question of fact that will depend on the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in determining what time is reasonable. If, on the other hand, the accused did not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to toll the statute of limitations." Id., 451. Because the statute of limitations is an affirmative defense, however, and because Crawford presented no evidence suggesting that the warrant in that case was not executed with due diligence, we were unable to conclude that the delay was unreasonable, and, accordingly, we upheld the trial court's judgment. See id., 451–53.

In light of the inadequacy of the record in *Crawford*, we had no occasion to consider what kind of evidence a defendant must present to support a statute of limitations defense. Subsequent Appellate Court cases, however, have considered that question and concluded that, once a defendant presents evidence of his availability for arrest during the limitation period, the burden shifts to the state to present evidence of its due diligence in executing the warrant. See, e.g., *State* v. *Woodtke*, 130 Conn. App. 734, 740, 25 A.3d 699 (2011) ("once a defendant puts forth evidence to suggest that she was not elusive, was available and was readily approachable, the burden shifts to the state to prove that the delay in executing the warrant was not unreasonable" [internal quotation marks omitted]), quoting *State* v. *Soldi*, supra, 92 Conn. App. 857.

In contravention to its position before the Appellate Court, the state argues before this court that *Soldi* and *Woodtke* are incompatible with *Crawford* because they eliminate the defendant's burden of proving the statute of limitations defense.[7] To the contrary, we hold that this burden shifting framework is a logical and proper extension of this court's decision in *Crawford*. Specifically, we hold that, once the defendant has demonstrated his availability for arrest, he has done all that is required to carry his burden; the burden then shifts to the state to demonstrate that any period of delay in executing the warrant was not unreasonable.

As we previously noted, in *Crawford*, this court had no reason to explore the extent of Crawford's burden in proving the statute of limitations defense. Nothing that we said in *Crawford*, however, is inconsistent with the burden shifting approach that the Appellate Court later adopted. In *Crawford*, we simply held that the statute of limitations is an affirmative defense in Connecticut, such that a defendant is required to present

some evidence "concerning the reason for the delay in the execution of the warrant . . . ." *State* v. *Crawford*, supra, 202 Conn. 451. In that case, neither Crawford nor the state presented any evidence at all with respect to this issue—including any evidence of Crawford's location during the limitation period. See id., 445–46. The subsequent cases of the Appellate Court, however, as well as the present case, stand in contrast.[8] When a defendant presents evidence that she was "not elusive, was available and was readily approachable"; *State* v. *Soldi*, supra, 92 Conn. App. 857; as the defendant did in the present case, we agree with the court in *Soldi* that she has discharged her burden under *Crawford*.[9] By eliminating one possible reason for delay—the defendant's absence or elusiveness—such evidence manifestly *concerns* the reason for delay and the diligence of the police in executing the warrant. See, e.g., 1 A.L.I., Model Penal Code and Commentaries (1985) § 1.06, comment, p. 95 (Model Penal Code and Commentaries) ("[i]n determining whether delay is unreasonable, factors affecting the state's ability to locate the accused may be taken into account"); see also *State* v. *Figueroa*, 235 Conn. 145, 178, 665 A.2d 63 (1995) ("if the defendant puts forward evidence to suggest that the state reasonably could have executed the warrant sooner," reasonableness is question of fact for jury); *State* v. *Ali*, 233 Conn. 403, 416, 660 A.2d 337 (1995) (because police had defendant's address, "[t]he jury could have concluded . . . that . . . the arrest could have been effectuated far sooner").

Our conclusion that a defendant satisfies his burden by producing evidence of his nonelusiveness and availability also accords with this court's observation in *Crawford* that, "[i]f . . . the accused [does] not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to toll the statute of limitations." *State* v. *Crawford*, supra, 202 Conn. 451. Indeed, our primary reason in that case for concluding that a prosecution commences with the issuance rather than the execution of an arrest warrant was to avoid "reward[ing]" an accused, "absent evidence of a lack of due diligence on the part of the officer charged with executing the warrant, for managing to avoid apprehension to a point in time beyond the period of limitation." Id., 450. In the present case, however, we have no such concerns because the trial court expressly found that "the defendant was not elusive, was available in the area and did not evade at the time service was made," and those findings have not been challenged on appeal.

Once the defendant has presented evidence of his availability for arrest, it is reasonable and proper that the burden should then shift to the state to explain why, notwithstanding the defendant's availability during the statutory period, the delay in his arrest was reasonable. Doing so allocates burdens efficiently by requiring each

party to bring forth evidence uniquely within its knowledge. Such a burden shifting model is also consistent with the distribution of burdens with respect to other affirmative defenses in Connecticut, few of which require a defendant to present affirmative evidence of matters beyond his personal ken.[10] To dispense with that model in the present case would needlessly impose a significant burden on the defendant—and the judicial system—when the state is in a far better position to determine what efforts were undertaken to ensure the defendant's prompt arrest.

This burden shifting scheme also encourages diligence by law enforcement officials in providing timely notice of charges to defendants. Although we decline to specify the precise actions that they must undertake to serve a warrant with due diligence, or the precise timeline within which they must act, such officials must present some credible and persuasive factual basis for inaction when they fail to observe the statute of limitations. This requirement is consistent with the principle that, when a judicial doctrine, "for all practical purposes, extends the statute [of limitations] beyond its stated term," that doctrine "should be applied in only limited circumstances . . . ."[11] (Internal quotation marks omitted.) *Toussie* v. *United States*, 397 U.S. 112, 115, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970); see id. (considering doctrine of continuing offenses). Accordingly, once a defendant has demonstrated his availability and nonelusiveness during the statutory period, the state must then demonstrate the reasonableness of any delay between the issuance and the service of an arrest warrant, at least when service occurs after the expiration of the limitation period.

The state nonetheless argues that the Appellate Court correctly determined that some delays in the execution of an arrest warrant, including the thirty-two day delay in question, are so brief as to require no justification on the part of the state. We are not persuaded by this contention.

In *Crawford*, as we have previously explained, this court explicitly declined to "adopt a per se approach as to what period of time to execute an arrest warrant is reasonable," concluding, instead, that the reasonableness determination must be made on a case-by-case basis in light of the particular facts and circumstances presented. *State* v. *Crawford*, supra, 202 Conn. 451. As *Crawford* also made clear, in the absence of any effort by the defendant to elude the authorities, even a short period of delay in executing the warrant might be unreasonable if there is no legitimate explanation or justification for the delay. Id.

In reaching a contrary conclusion, the Appellate Court relied on its decision in *Kruelski*. See *State* v. *Swebilius*, supra, 158 Conn. App. 426–28. In *Kruelski*, a warrant was issued for the defendant's arrest on

August 22, 1994, but was only delivered to an officer for service, and subsequently executed, on August 25, 1994, one day after the expiration of the one year statute of limitations. *State* v. *Kruelski*, supra, 41 Conn. App. 478. The trial court determined that the prosecution was barred by the statute of limitations because the warrant, although issued, had not been "delivered" to a proper officer for service within the limitation period. Id., 479. The Appellate Court reversed the trial court's dismissal of the case; id., 488; concluding that the point at which a warrant is delivered to an officer for service is irrelevant under *Crawford*, which requires only that the period between issuance and execution of the warrant not be unreasonable. See id., 485–87. The court then concluded, "as a matter of law," and with no additional analysis, "that [the] one day delay was not an unreasonable delay vitiating the tolling of the statute of limitations." Id., 487. In light of this language, the Appellate Court in the present case concluded that some delays can be so short that they require no justification on the part of the state. We disagree. To the extent that *Kruelski* relies on a per se exception to the statute of limitations for short periods of delay,[12] it is inconsistent with this court's conclusion in *Crawford* and is hereby overruled.[13]

Other cases applying *Crawford* provide similarly little support for the Appellate Court's conclusion that brief delays may be reasonable simply because they are short in duration. It is true that the periods of delay considered in most Connecticut cases have been significantly longer than thirty-two days.[14] Such statistics, however, have limited value in the present context because when lengthy delays were found to be reasonable in those cases, additional facts, aside from the length of the delay alone, supported that conclusion. See, e.g., *State* v. *Derks*, 155 Conn. App. 87, 89–90, 95, 108 A.3d 1157 (delay of nearly twelve years reasonable where defendant moved out of state), cert. denied, 315 Conn. 930, 110 A.3d 432 (2015). Indeed, typically, the defendant's evasive actions have been a significant or dispositive reason for the delay. See footnote 14 of this opinion. Consequently, these cases do not require us to conclude that shorter periods of delay are necessarily reasonable once a defendant has established his availability for arrest.

Finally, we agree with the defendant that a rule making some delays reasonable without any showing of due diligence is inconsistent with the purposes of statutes of limitations. As we have observed, such statutes serve several functions, among them "(1) prevent[ing] the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) . . . aid[ing] in the search for truth that may be impaired by the

loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." (Internal quotation marks omitted.) *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 809–10, 12 A.3d 852 (2011); see also Model Penal Code and Commentaries, supra, § 1.06, comment, p. 86. It is precisely because of these concerns that we require statutes of limitations to be strictly construed in favor of the accused. See, e.g., *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987). Thus, although the precise length of any statutory limitation period is necessarily somewhat arbitrary, such statutes nevertheless reflect the will of the legislature that, at least in the absence of special or compelling circumstances, the limitation period shall serve as a firm bar to prosecution. See, e.g., id., 100 (prosecution for sexual assault was barred when warrant was issued ten days after expiration of statute of limitations). It is also well established that statutes of limitations are not primarily concerned with demonstrable prejudice.[15] See *State* v. *Woodtke*, supra, 130 Conn. App. 740. Instead, after the passage of the specified period of time, evidence of prejudice becomes less important than the virtues of predictability, repose, and societal stability. See, e.g., *United States* v. *Marion*, 404 U.S. 307, 322, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971) ("[S]tatutes [of limitations] represent legislative assessments of relative interests of the [s]tate and the defendant in administering and receiving justice; they are made for the repose of society and the protection of those who may [during the limitation] . . . have lost their means of [defense]. . . . These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." [Citation omitted; internal quotation marks omitted.]); see also C. Callahan, "Statutes of Limitation—Background," 16 Ohio St. L.J. 130, 137 (1955) ("the social interest in individual stability is the purpose [that] most nearly accords with the apparent scope of the statutes" [footnote omitted]).

Accordingly, we agree with the drafters of § 1.06 (5) of the Model Penal Code[16] that "[i]t is undesirable . . . to toll the statute of limitations in instances [in which] the warrant is issued but no effort is made to arrest a defendant whose whereabouts are known." Model Penal Code and Commentaries, supra, § 1.06, comment, p. 95. The policies underlying statutes of limitations are best served when exceptions are interpreted narrowly in favor of the accused and the state has a strong incentive to ensure that a defendant is provided timely notice of charges.

To be sure, our decision in the present case is not intended to impose an undue burden on the state. We have concluded merely that, if the defendant can demonstrate his availability during the statutory period, the state must make some effort to serve the arrest warrant before the relevant statute of limitations expires, or to

offer some evidence explaining why its failure to do so was reasonable under the circumstances. Indeed, in cases involving relatively brief delays, evidence of a legitimate need to prioritize competing public safety responsibilities may well be sufficient to demonstrate compliance with the dictates of *Crawford*.[17] That fact sensitive determination, however, is a matter properly within the reasoned judgment of the fact finder.

In the present case, the trial court relied solely on the length of the delay in ruling in the state's favor. As we have explained; see footnote 5 of this opinion; in doing so, the trial court effectively applied an incorrect legal standard. Because the standard employed by the trial court was incorrect, the state had no need to adduce evidence justifying the delay. Accordingly, on remand, the state must be afforded the opportunity to demonstrate that it made reasonable efforts to execute the warrant before the expiration of the statute of limitations or to explain why its failure to do so was reasonable under the circumstances.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for further proceedings according to law.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson. Thereafter, Justice Zarella retired from the court. Although Justice Espinosa was not present at oral argument, she has read the briefs and appendices, and has listened to a recording of oral argument prior to participating in this decision.

[1] The applicable statute of limitations is General Statutes (Rev. to 2007) § 54-193 (b), which provides in relevant part: "No person may be prosecuted for any offense, except a capital felony, a class A felony or a violation of section 53a-54d or 53a-169, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed. . . ."

[2] The arrest warrant states that 119 images and 30 video recordings appearing to depict child pornography were recovered from the defendant's storage media.

[3] The trial court found that counsel for the defendant learned of the arrest warrant, by telephone, from the police on May 31, 2013. The hearing testimony is less clear about whether it was counsel or the defendant himself who initiated contact with the police, and about when the defendant first became aware of the warrant. As the Appellate Court noted, however, it is clear that there was some contact between the defendant and the police after the statute of limitations had expired but prior to the execution of the arrest warrant. See *State* v. *Swebilius*, supra, 158 Conn. App. 427 n.9.

[4] The trial court and, thereafter, the Appellate Court calculated the delay in the execution of the warrant in the present case as totaling thirty-one days. The parties, however, agree that the delay was thirty-two days. We agree with the parties and therefore treat the delay as thirty-two days.

[5] While recognizing that a per se approach to reasonableness is improper under *Crawford*, the trial court's ruling, as reflected in its memorandum of decision, is predicated solely on the length of time that had elapsed. Although the state defends the trial court's decision as a matter of "basic common sense," we do not believe that simply citing a period of time and stating that "common sense" makes that period of time reasonable can, without more, render the trial court's determination one of fact. Thus, whether the trial court labeled this a per se rule or a matter of common sense, or something else entirely, is simply immaterial; it was essentially a legal,

rather than factual, determination. In other words, the trial court effectively determined that the delay was reasonable as a matter of law, solely on the basis of the length of the delay and irrespective of any other facts.

[6] In reviewing a motion to dismiss, appellate courts exercise plenary review over the trial court's ultimate legal conclusions, even as the facts underlying the decision are reviewed only for clear error. See, e.g., *State* v. *Bonner*, 290 Conn. 468, 477–78, 964 A.2d 73 (2009). Thus, because the trial court effectively based its decision on the legal conclusion that a thirty-two day delay in the execution of an arrest warrant is sufficiently brief as to be per se reasonable under *Crawford*, we review its decision as a question of law over which we exercise de novo review.

[7] The state, in its Appellate Court brief in the present case, conceded that, "under circumstances [in which] the defendant has shown himself not to have been elusive and/or [when] it would not have been particularly difficult to locate him and [to] serve the arrest warrant, *the burden to prove that the arrest warrant was executed during a reasonable period of time shifts to the state*." (Emphasis added.) *State* v. *Swebilius*, Conn. Appellate Court Briefs & Appendices, April Term, 2015, State's Brief p. 22. The first case the state cited in support of that proposition was *Crawford*. Id.

[8] We note that the cases since *Crawford* that have considered the distribution of burdens in relation to § 54-193 (b) have been nearly uniform in placing the burden on the state to present evidence of due diligence. See, e.g., *Roger B.* v. *Commissioner of Correction*, 157 Conn. App. 265, 271–72, 279–80, 116 A.3d 343 (2015) (when petitioner claimed ineffective assistance of counsel on basis of his attorney's failure to raise statute of limitations defense, burden shifted to respondent to prove that delay was not unreasonable once petitioner demonstrated that he was available for arrest); *State* v. *Derks*, 155 Conn. App. 87, 89–90, 94, 108 A.3d 1157 (burden of proof never shifted to state because defendant absconded to Colorado and lived there for more than twelve years between issuance and execution of warrant), cert. denied, 315 Conn. 930, 110 A.3d 432 (2015); *State* v. *Woodtke*, supra, 130 Conn. App. 741, 744–45 (state failed to carry burden when it did not diligently search for defendant); *Gonzalez* v. *Commissioner of Correction*, 122 Conn. App. 271, 285–86, 999 A.2d 781 (burden of proof never shifted to state because petitioner had relocated to Puerto Rico), cert. denied, 298 Conn. 913, 4 A.3d 831 (2010); *State* v. *Kader*, Superior Court, judicial district of New Haven, Docket No. N23N-MV-13-081829-S (April 26, 2013) (55 Conn. L. Rptr. 925, 925–26) (delay of nearly fifteen months in serving arrest warrant was unreasonable when defendant lived openly and continuously at Connecticut residence, police made no attempt to serve warrant, and "state could offer no compelling reason" for delay); *State* v. *Gauthier*, Superior Court, judicial district of New Haven, Docket No. N23N-MV-11-0074499-S (September 11, 2012) (because defendant "did nothing to evade arrest," burden shifted to state "to show whether the delay was reasonable or not"); *State* v. *Saez*, Superior Court, judicial district of New Haven, Docket No. MV-08-0046495-S (August 28, 2009) (acknowledging vitality of burden shifting regime); but see *State* v. *Suarez*, Superior Court, judicial district of New London, Docket No. MV-99-0639258-S (November 23, 1999) (25 Conn. L. Rptr. 647, 648) ("the [d]efendant did not establish by a preponderance of the evidence that the warrant had been unreasonably delayed" because he "did not prove that the state police did not make attempts to serve the warrant"). In light of this history, there is little merit in the state's argument that the burden shifting framework of the Appellate Court's cases threatens to upend the well established holding of *Crawford*. Rather, the interests of stability, continuity, and judicial efficiency promoted by the principle of stare decisis; see, e.g., *Conway* v. *Wilton*, 238 Conn. 653, 659, 680 A.2d 242 (1996); militate in favor of recognizing that *Soldi* and *Woodtke* have long been the de facto rule of law in Connecticut.

[9] General Statutes § 53a-12 (b), which defines affirmative defenses, is instructive. Section 53a-12 (b), which provides that "[w]hen a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence," was incorporated into our Penal Code in 1969 "largely" on the basis of the New York Revised Penal Law, and the relevant statutes of New York and Connecticut are nearly identical. Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. § 53a-12 (West 2012) comment, p. 429. Furthermore, like Connecticut, New York considers the statute of limitations to be an affirmative defense that "must be pleaded and proved by the party invoking it . . . ." (Citation omitted.) *Paladino* v. *Time Warner Cable*, 16 App. Div. 3d 646, 647, 793 N.Y.S.2d

63 (2005).

Yet, New York cases require only that a defendant allege the expiration of the statutorily prescribed period in order to establish a prima facie defense under the statute of limitations, at which point the burden shifts to the state to show that the statute was tolled. See, e.g., *People* v. *Burroughs*, 108 App. Div. 3d 1103, 1104, 968 N.Y.S.2d 773 ("[W]hen the crimes were committed, the statute of limitations for the charged offenses was five years . . . . Because [the defendant] was not charged until more than seven years later, [the] defendant raised a facially viable statute of limitations defense, and the burden thus shifted to the [government] to prove beyond a reasonable doubt that the statute of limitations was tolled or otherwise inapplicable . . . ." [Citations omitted.]), appeal denied, 22 N.Y.3d 995, 3 N.E.3d 1169, 981 N.Y.S.2d 1 (2013).

The cases cited in *Crawford* for the proposition that the statute of limitations is an affirmative defense do not contradict this lineage or otherwise undermine the distribution of burdens endorsed by the New York courts. Those cases merely acknowledge that, as an affirmative defense, the statute of limitations places some burden of proof on the defendant. They say nothing about the *extent* of that burden. See, e.g., *State* v. *Coleman*, 202 Conn. 86, 90, 519 A.2d 1201 (1987) (addressing whether statute of limitations defense " 'terminates a separate and distinct proceeding' " from underlying criminal action or whether it "confers . . . a statutory right not to be prosecuted" for final judgment purposes under *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 [1983]); *State* v. *Littlejohn*, 199 Conn. 631, 640, 508 A.2d 1376 (1986) (considering whether "to treat the statute of limitations as jurisdictional and hence nonwaivable [or] as an affirmative defense and hence waivable"); see also *United States* v. *Karlin*, 785 F.2d 90, 92–93 (3d Cir. 1986) ("in criminal cases the statute of limitations does not go to the jurisdiction of the court but is an affirmative defense that will be considered waived if not raised . . . before or at trial"), cert. denied, 480 U.S. 907, 107 S. Ct. 1351, 94 L. Ed. 2d 522 (1987).

[10] See, e.g., General Statutes § 53a-13 (a) (affirmative defense to prosecution if defendant "lacked substantial capacity . . . either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law"); General Statutes § 53a-16b (affirmative defense for coparticipant in firearm offense if defendant was unarmed and "had no reasonable ground to believe that any other participant was armed"); General Statutes § 53a-67 (a) (affirmative defense for sexual offenses involving mentally incapacitated or physically helpless victim, or victim impaired because of mental disability or disease, if defendant did not know that victim suffered from such condition); General Statutes § 53a-67 (b) (affirmative defense for certain sex offenses if defendant and victim lived together by mutual consent in relationship of cohabitation); General Statutes § 53a-110 (3) (affirmative defense to criminal trespass if defendant reasonably believed he would have been licensed to enter or remain on premises); General Statutes § 53a-134 (a) (affirmative defense to first degree robbery if weapon used or displayed in robbery was not weapon from which shot could be discharged); General Statutes § 53a-190 (b) (affirmative defense to charge of bigamy if defendant reasonably believed that prior spouse was dead or did not know that other person was legally married); General Statutes § 53a-196g (affirmative defense to charge of possessing child pornography if defendant possessed fewer than three pornographic images, did not knowingly take steps to possess such images, and promptly destroyed them or turned them over to authorities upon discovery); but see General Statutes § 53a-104 (affirmative defense to burglary if building was abandoned); General Statutes § 53a-110 (1) (affirmative defense to criminal trespass if building was abandoned).

[11] At oral argument, the state contended that the rule in *Crawford* should be viewed as recognizing an exception to a general rule that prosecution commences upon the issuance of an arrest warrant, and because such an exception benefits the defendant, it should be the defendant's burden to prove that the delay was unreasonable. It is unlikely, however, that the legislature ever intended to allow the statute of limitations to be tolled simply by the issuance of a warrant without further efforts to apprise the defendant of the warrant's existence. Doing so would contravene the policy of notice fundamental to statutes of limitations. See, e.g., *State* v. *Almeda*, 211 Conn. 441, 446, 560 A.2d 389 (1989). *Crawford* is more properly viewed as an exception to the rule that a defendant must have notice of prosecution within the limitation period. In that sense, it benefits the state by extending the period of limitation beyond its stated term and must be applied judiciously.

[12] It may be, as the defendant argues, that *Kruelski* intended to incorporate certain facts presented in the dissent in that case, such that the three day delay was reasonable not merely because of the brevity of the delay but also because the warrant was executed on the same day that it was delivered to the officer responsible for its execution. Undoubtedly, most courts would find such facts to be compelling evidence of reasonableness. Indeed, we acknowledge that, as a general matter, the burden of justifying a brief delay of the sort at issue in *Kruelski* is not a weighty one. But the court in that case provided no analysis supporting its conclusion, and nothing in the decision in that case indicates that the majority based its decision on any facts other than the length of the delay.

[13] More in line with the approach that we adopted in *Crawford* is the approach that the Kansas Court of Appeals took in *State* v. *Divers*, Kansas Court of Appeals, Docket No. 106312 (October 5, 2012), in which the court considered a twenty-four day delay between issuance and execution, including five days after the statute of limitations had expired. The court found that the delay was not unreasonable because "the [s]tate was much more diligent" in that case than in other Kansas cases, entering the warrant into the National Crime Information Center database and contacting the defendant's relatives and neighbors in an attempt to serve the warrant. Id. Thus, although the court ultimately decided that the twenty-four day delay was reasonable, it did so only after considering the diligence of the police. Id.; see also *State* v. *Gauthier*, Superior Court, judicial district of New Haven, Docket No. N23N-MV-11-0074499-S (September 11, 2012) (delay of forty-nine days after statute of limitations expired was not unreasonable because officers "maintained diligent attention to [the] case" and attempted to serve warrant as soon as officer was aware it had been signed).

[14] Aside from *Kruelski* and *State* v. *Suarez*, Superior Court, judicial district of New London, Docket No. MV-99-0639258-S (November 23, 1999) (25 Conn. L. Rptr. 647, 647–48) (reviewing delay of more than five months but not considering whether it was per se reasonable), the shortest overall delay from issuance of an arrest warrant to its execution was approximately thirteen months, including forty-nine days after the expiration of the statute of limitations. See *State* v. *Gauthier*, Superior Court, judicial district of New Haven, Docket No. N23N-MV-11-0074499-S (September 11, 2012). But delays that have been deemed to be reasonable have been as long as fourteen years. See *State* v. *Henriquez*, Superior Court, judicial district of New Haven, Docket Nos. CR-09-96308 and CR-09-96309 (February 4, 2011) (delay between 1995 and 2009 due to defendant's own evasive actions in leaving state and living under assumed name). Although other jurisdictions with similar laws have found overall delays of between seventy-five and eighty-four days to be unreasonable; see, e.g., *State* v. *Long*, 276 Kan. 297, 302–304, 75 P.3d 1217 (2003) (state failed to create record justifying seventy-five delay) *State* v. *Dozal*, 31 Kan. App. 2d 344, 345, 348, 65 P.3d 217 (2003) (in case involving eighty-four day delay, mailing letter to defendant notifying him of arrest warrant and requesting that he travel to Sheriff's Department to be arrested "cannot be held to be a bona fide effort to serve a warrant"); in Connecticut, the shortest overall delay found to be unreasonable lasted more than one year. See *State* v. *Kader*, Superior Court, judicial district of New Haven, Docket No. N23N-MV-13-081829-S (April 26, 2013) (55 Conn. L. Rptr. 925, 926) (delay of fifteen months, including almost three months after expiration of statute of limitations).

[15] In this case, there is no indication that the delay in the execution of the warrant was demonstrably prejudicial to the defendant. Indeed, at trial, the defendant declined to pursue a due process claim because he felt that " 'having investigated, [he did not] have any evidence to put on' " regarding prejudice.

[16] Model Penal Code § 1.06 (5), the provision that this court adopted in *Crawford*, provides: "A prosecution is commenced either when an indictment is found [or an information filed] or when a warrant or other process is issued, provided that such warrant or process is executed without unreasonable delay." Model Penal Code and Commentaries, supra, § 1.06 (5), p. 84.

[17] Significantly, thousands of new warrants are issued each month in Connecticut, and the execution of those warrants is only one of many competing demands placed on police departments throughout the state. See, e.g., Judicial Branch, State of Connecticut, Statistics/Reports, Arrest Warrants, available at http://jud.ct.gov/statistics/FTA_VOPS3rdquarter2016-2017.pdf (data regarding failure to appear, violation of probation, and order to incarcerate warrants); see also *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 769 n.28, 12 A.3d 817 (2011) (court may take notice of

government statistics). Properly contextualized, such statistics may well provide evidence of reasonableness in a particular case. At the same time, we agree with the Appellate Court that "[t]he mere fact that a police department is 'a very busy urban police department' is not enough for it to avoid its obligation to serve the warrants in a timely manner." *State* v. *Woodtke*, supra, 130 Conn. App. 744.

––––––––––––––––––––––––––––